IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES MARBLE; VIVIAN MARBLE; and STATE OF OKLAHOMA *ex rel.* Commissioners of the Land Office,<br><br>  Plaintiffs,<br><br>v.<br><br>NS JPF LENDER, LLC; JIM PARKER FARMS, LLC; and UNITED STATES OF AMERICA *ex rel.* Bureau of Land Management,<br><br>  Defendants. | Case No. CIV-23-00227-JD<br>(Consolidated with<br>Case No. CIV-24-00110-JD) |

## ORDER

Before the Court are NS JPF Lender, LLC's ("Newstream") Motion to Dismiss for Lack of Subject Matter Jurisdiction, Lack of Personal Jurisdiction, and Improper Venue [Doc. No. 33] and Jim Parker Farms, LLC's ("Jim Parker Farms") Motion to Dismiss [Doc. No. 35] (collectively "Motions" filed by "Defendants"). Among other arguments, Defendants maintain venue in the Western District of Oklahoma is improper and seek to have the Court dismiss the case or transfer it to the United States District Court, Northern District of Texas, Wichita Falls Division.[1] The United States of America *ex rel.* Bureau

---

[1] Newstream also filed a Motion to Transfer Venue. [Doc. No. 38]. However, unlike the Motions that maintain venue is improper, the Motion to Transfer seeks permissive transfer under 28 U.S.C. § 1404(a). The Court, however, limits its analysis to the arguments raised in the briefing directed at improper venue pursuant to the Motions brought under § 1406 and the Responses to the Motions—i.e., [Doc. Nos. 33, 35, 39, 40]. *Cf. United States v. Sineneng-Smith*, 590 U.S. ----, 140 S. Ct. 1575, 1579 (2020) (explaining that "our adversarial system of adjudication . . . follow[s] the principle of

of Land Management ("BLM") agrees that venue in the Western District of Oklahoma is improper. *See* [Doc. No. 45]. James and Vivian Marble ("the Marbles"), in addition to the State of Oklahoma *ex rel.* Commissioners of the Land Office ("CLO") (collectively "Plaintiffs"), filed responses in opposition to the Motions ("Responses"). [Doc. Nos. 39, 40]. Upon careful consideration of the Motions and the Responses, the Court grants the Motions in part.

I.  **BACKGROUND**

Toward the end of 2021, the Marbles acquired 1,571 acres of property near the Red River. Am. Compl. [Doc. No. 10] at 5.[2] The transferring deed stated that the property was in Jefferson County, Oklahoma and was recorded in the Jefferson County land records. *Id.* The deed stated that a portion of the property was for "surface and surface rights only" because the State of Oklahoma, by way of CLO, retained all mineral rights to that portion of the property. *Id.* at 5, 6.

In late 2022, Newstream acquired property, near the Red River, purported to be in Clay County, Texas. *Id.* at 9, 13. The deed for this property was recorded in Clay County. *Id.* Clay County is also where the taxes for this property were assessed. *Id.* at 13. Defendants built a fence around part of this property. *Id.* at 14.[3]

---

party presentation" and parties represented by competent counsel "are responsible for advancing the facts and argument entitling them to relief") (internal quotation marks and citation omitted).

[2] The Court uses page numbering from across the top of CM/ECF filings.

[3] The nature of the relationship between Newstream and Jim Parker Farms is not entirely clear from the Amended Complaint. The Marbles allege in the consolidated

Plaintiffs allege that approximately 499 acres of the property described in Newstream's deed is actually part of their property ("disputed property"). Am. Compl. at 13. Additionally, Plaintiffs contend that the United States, by way of BLM, owns part of the land in question but is unclear on its exact boundaries. *Id.* at 15. Plaintiffs assert that BLM's property's boundaries overlap with the property Newstream claims to own and likely also overlap with the property Plaintiffs claim to own. *Id.*

Accordingly, Plaintiffs filed suit against Newstream, Jim Parker Farms, and BLM. They bring claims against Newstream and Jim Parker Farms for quiet title, trespass, slander of title, permanent injunction, and/or inverse condemnation. *Id.* at 18–22. They also bring claims against BLM for quiet title pursuant to 28 U.S.C. § 2409a and declaratory judgment to determine property boundaries. *Id.* at 22–23.

Shortly after Plaintiffs filed suit in this Court, Newstream filed suit against the Marbles for trespass to try title and quiet title in the District Court of Clay County, Texas ("Texas case"). The Marbles removed that case to the Northern District of Texas and sought transfer to this Court. Judge Reed O'Connor transferred the Texas case to this Court. [Doc. No. 66-1]. He premised his order on the Fifth Circuit's first-to-file rule and held that since the Texas case substantially overlapped with the issues and parties in this case, the proper course of action was to transfer the Texas case to the Western District of

---

action that property known as "Parker Farms" is owned by NS JPF Lender, LLC. *See NS JPF Lender, LLC v. James and Vivian Marble*, Case No. 24-cv-00110-JD, Notice of Removal [Doc. No. 1 at 3 ¶ 7]. Jim Parker Farms' corporate disclosure statement in this action does not reveal a relationship with Newstream. *See* Corp. Disclosure Stmt. [Doc. No. 18].

Oklahoma so that this Court could determine whether to dismiss, transfer, or consolidate the cases. *Id.* at 3–6.

In light of the Texas case's transfer to the Court, Plaintiffs moved to consolidate the Texas case with this case. As evidenced by the Court's order, the two cases are consolidated for purposes of the Court's venue determination. [Doc. No. 71].

## II. LEGAL STANDARD

The plaintiff bears the burden of proving venue is proper. *See Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998). In reviewing motions to dismiss for improper venue, courts can consider evidence outside the complaint such as affidavits submitted by the defendant. *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1260 (10th Cir. 2012). "[A] plaintiff may rest on the well-pled facts in the complaint to oppose a motion to dismiss for improper venue, but 'only to the extent that such facts are uncontroverted by defendant's' evidence." *Id.* (quoting *Pierce*, 137 F.3d at 1192).

The general venue statute, in relevant part, states, "A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Concerning venue transfers, 28 U.S.C. § 1406(a) states, "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Although § 1406(a) contains the word "shall," the Tenth Circuit has interpreted the phrase "in the interest of justice" "to grant the district court discretion in making a decision to transfer an action or

instead to dismiss the action without prejudice." *Trujillo v. Williams*, 465 F.3d 1210, 1222–23 (10th Cir. 2006).

## III. <u>ANALYSIS</u>

Plaintiffs contend that venue is proper in the Western District of Oklahoma because, to transfer the case, the Court would first have to decide where the disputed property is located. They argue such a determination is improper because then, the Court would essentially be granting summary judgment on a disputed material fact—namely, "the location of the boundary line between the States of Texas and Oklahoma." [Doc. No. 39 at 19].

The boundary line between Oklahoma and Texas, which generally follows the course of the Red River, has long been a matter of controversy. *See Oklahoma v. Texas*, 258 U.S. 574, 578 (1922). When the controversy was considered by the Supreme Court, "the chief point of difference between the parties was that Oklahoma and the United States were claiming the south bank of the river as the boundary, while Texas was contending for the thread or middle of the stream." *Oklahoma v. Texas*, 260 U.S. 606, 624 (1923). The Supreme Court concluded that the boundary was along the south bank of the Red River. *Id.* It defined the south bank as "the cut bank along the southerly side of the sand bed," and said that "the boundary is on and along that bank at the mean level of the water, when it washes the bank without overflowing it." *Id.* at 636.

In 1999, Oklahoma and Texas entered the Red River Boundary Compact ("Compact"), which was approved by Congress in 2000. Pub. L. 106-288; *see Texas v. New Mexico*, 462 U.S. 554, 564 (1983) ("Under the Compact Clause, two States may not

5

conclude an agreement . . . without the consent of the United States Congress. However, once given, 'congressional consent transforms an interstate compact within this Clause into a law of the United States.'" (quoting *Cuyler v. Adams*, 449 U.S. 433, 438 (1981))). Like *Oklahoma v. Texas*, the Compact states that "[t]he south bank of the Red River is the boundary between the states along the Red River," but it notes that "while the south bank, at any given time, may be located through expensive and time-consuming survey techniques, such surveys can, at best, identify the south bank only as it exists at the time of the survey." Okla. Stat. tit. 74, § 6106(Art. I)(A)(2), (4). "Locating the south bank through survey techniques is of minimal aid when agencies of the party states must locate the state boundary line for law enforcement, administrative and taxation purposes." *Id.* § 6106(Art. I)(A)(5). Accordingly, the states sought "to establish an identifiable boundary between the states of Oklahoma and Texas along the Red River . . . without changing title of any person or entity, public or private, to land adjacent to the Red River." *Id.* § 6106(Art. I)(B). One of the "compelling purposes" of entering the Compact was to avoid "questions of venue in civil and criminal proceedings that may arise as a result of incidents along the boundary and avoidance or minimization of future disputes and litigation." *Id.* § 6106(Art. I)(B)(4).

The Compact states that "[t]he permanent political boundary line between the states of Oklahoma and Texas along the Red River is the vegetation line along the south bank of the Red River except for the Texoma area, where the boundary does not change."

6

*Id.* § 6106(Art. II)(B).[4] "Vegetation line" is defined as "the visually identifiable continuous line of vegetation that is adjacent to that portion of the riverbed kept practically bare of vegetation by the natural flow of the river and is continuous with the vegetation beyond the riverbed." *Id.* § 6106(Art. II)(A)(2). More specifically, "'[v]egetation' means trees, shrubs, grasses, and other plant species that substantially cover the ground." *Id.* § 6106(Art. II)(A)(1). "[T]he State of Oklahoma possesses sovereignty over all lands north of the boundary line established by [the] [C]ompact and . . . the State of Texas possesses sovereignty over all lands south of the boundary line established by [the] [C]ompact." *Id.* § 6106(Art. III).

Relatedly, the John D. Dingell, Jr. Conservation, Management, and Recreation Act (the "Dingell Act") was enacted by Congress, in part, "to promote enhanced public outdoor recreational and natural resource conservation opportunities." Pub. L. No. 116-9, § 1001. It says that a "gradient boundary survey" is required "to identify the South Bank boundary line" of the Red River as specified in *Oklahoma v. Texas*, 261 U.S. 340 (1923) "with respect to title and ownership." *Id.* § 1120. However, the Dingell Act makes clear that it "does not impact or alter the permanent political boundary line between the States along the Red River, as outlined under article II, section B of the Red River Boundary Compact enacted by the States and consented to by Congress." *Id.* § 1120(a)(6).

Here, Newstream has submitted affidavits from two of its authorized representatives that say "[o]n or about July 30, 2020, I personally visited the land being

---

[4] The parties do not assert that the land in question is part of the Texoma area.

claimed by Plaintiffs in Plaintiffs' First Amended Complaint." [Doc. No. 33-2 ¶ 4; Doc. No. 33-3 ¶ 4]. Based on their observation, the representatives state that

> the Disputed Property is located south of the continuous line of trees, shrubs, and grasses that substantially cover the ground on the South side of the Red River, which is adjacent to the portion of the Red River riverbed that is kept practically bare of vegetation, and which is continuous with the vegetation beyond the riverbed.

[Doc. No. 33-2 ¶ 7; Doc. No. 33-3 ¶ 7]. Newstream also included aerial photographs of the area showing where the vegetation line begins in relation to where the disputed property is located. [Doc. No. 33-2 ¶ 11; Doc. No. 33-3 ¶ 11].

In their Responses, Plaintiffs provided an affidavit from CLO's general counsel. The affidavit states that "neither [of Newstream's representatives] are competent or authoritative with respect to determining the permanent political boundary line between the States of Oklahoma and Texas" because "the gradient boundary survey required by the Dingell Act . . . has not been conducted." [Doc. No. 39-1 ¶¶ 6, 7; Doc. No. 40-1 ¶¶ 6, 7]. But Plaintiffs do not directly challenge Newstream's contention that the disputed property is located south of the Red River's south vegetation line. Plaintiffs argue that the property is located in Jefferson County north of the Red River itself but present no evidence contradicting Defendant's affidavits that state that their representatives have seen where the vegetation line is and that the disputed property is south of that line.

Regarding Plaintiffs' argument that the Dingell Act mandates a "gradient boundary survey" to establish boundary lines with respect to title and ownership, such a survey is not required to verify the political boundary lines between Oklahoma and Texas. In fact, as stated previously, the text of the Act explicitly affirms the Compact's

8

legitimacy and refuses to alter the permanent political boundaries between Oklahoma and Texas.

Plaintiffs' contention that a survey is required before the Court can determine whether venue is proper is also contradicted by the Compact. One of the purposes of the Compact is to avoid venue questions in civil proceedings by establishing a boundary line between the two states that is an identifiable landmark—i.e., the vegetation line. Here, Newstream has provided evidence that the disputed property is located south of the continuous line of trees, shrubs, and grasses that substantially cover the ground on the South side of the Red River. Although Plaintiffs argue the Court should disregard this evidence as incredible and incompetent, they do not provide anything to contradict it. Similarly, the Court has no reason to think when Newstream's representatives visited the disputed property that this is not what they witnessed.

Plaintiffs have submitted no evidence regarding the south vegetation line and the affidavit from CLO's general counsel itself is not sufficient to carry Plaintiffs' burden of showing venue in the Western District of Oklahoma is proper. This conclusion in no way resolves the issue of title and ownership to the disputed property. But, based on the pleadings and evidence before it, the Court determines that, according to the political boundary between Oklahoma and Texas, a substantial part of property that is the subject of the action is situated in Texas—not Oklahoma.

As stated in the Court's recent Order, this case is consolidated with CIV-24-00110-JD for purposes of the Court's venue determination. In light of the Court's venue determination in this Order and the procedural posture of CIV-24-00110-JD, it is in the

interest of justice to transfer the cases to the United States District Court, Northern District of Texas, Wichita Falls Division. All of Defendants' arguments regarding dismissal hinge on the fact that this case was wrongly brought in Oklahoma instead of Texas. And transfer instead of dismissal will promote judicial efficiency—particularly given the procedural history of Case No. CIV-24-00110-JD. Because the Court is transferring for improper venue, it does not reach the other arguments raised by the parties.

### IV.  **CONCLUSION**

Since venue in the Western District of Oklahoma is improper, under 28 U.S.C. § 1406(a), and in the interest of justice, the Court grants the Motions in part and orders that this case be transferred to the United States District Court, Northern District of Texas, Wichita Falls Division. As this case is consolidated with CIV-24-00110 for purposes of the Court's venue determination, the Court orders that it be transferred to the same court.

IT IS SO ORDERED this 13th of March 2024.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE